# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| SUE SNOW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-3248 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

In this case seeking judicial review of denial of Social Security benefits, each party has filed a motion for summary judgment.[1] The motions now are ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Plaintiff's Motion should be **denied** and Defendant's Motion should be **granted**.

## I.   BACKGROUND

### A.   Procedural Background

Plaintiff Sue Snow filed an application with the Social Security Administration

---

[1] Plaintiff's Motion for Summary Judgment [Doc. # 24]; Defendant's Motion for Summary Judgment [Doc. # 22]; Defendant's Memorandum in Support [Doc. # 23].

("SSA") on March 25, 2008, seeking disability benefits under Title II and supplemental security income under Title XVI. In both applications, Snow alleged disability beginning March 9, 2008. After being denied benefits initially and on reconsideration, Snow timely requested an administrative hearing before an Administrative Law Judge ("ALJ") to review the decision.

ALJ Gerald L. Meyer held a hearing on April 22, 2009, in The Woodlands, Texas.[2] The ALJ heard testimony from vocational expert ("VE") Susan Rapant. No medical expert testified.

In a decision dated June 17, 2009, the ALJ denied Snow's application for benefits.[3] On June 8, 2010, the SSA's Appeals Council denied Snow's request to review the ALJ's decision, rendering the ALJ's determination final.[4] Snow filed this case on September 7, 2010, seeking judicial review of the Commissioner's denial of her claim for benefits.[5]

### B.     Factual Background

Plaintiff Snow claims disability due to chronic obstructive pulmonary disease

---

[2]     R. 24-41 (hearing transcript).

[3]     R. 10-20 (ALJ Decision).

[4]     R. 1-3.

[5]     Complaint [Doc. # 1].

("COPD"), hypertension, obesity, and anxiety disorder. She alleges that her impairments became disabling on March 9, 2008, at which time she stopped working. Until that time, she had worked as a certified nurse's assistant. Only Snow's psychological impairments are at issue in this appeal.

On March 9, 2008, Snow was admitted to the Conroe Regional Medical Center because of acute respiratory distress. She had previously been diagnosed with COPD. She complained of shortness of breath, dyspnea on exertion, a productive cough, and fever and chills. She reported smoking two packs of cigarettes per day for the past 32 years. Snow was treated with IV antibiotics for possible pneumonia, IV steroids, and nebulizer treatments. She also was given a series of laboratory tests and was put on anti-anxiety medication "just to calm her down."[6] She was discharged from the hospital on March 12 with resolved respiratory distress, and with prescriptions for Zoloft and Xanax for her anxiety and depression.[7] Snow continued to receive treatment at the Conroe Regional Medical Center throughout 2008, including treatment in November 2008 for difficulty breathing and for pain in her rib after suffering a fall.[8]

---

[6] R. 189-90.

[7] R. 191.

[8] R. 256-292.

Snow applied for benefits in March 2008, and the SSA conducted a series of assessments. On her application date of March 25, 2008, the interviewer for SSA reported Snow's difficulty with breathing, sitting, standing, talking, seeing, reading, understanding, and coherency. The interviewer noted shortness of breath, occasionally slurred speech, pale skin, poor memory, and confusion about her appointment schedule. Snow reported that she had been told she suffered from anxiety and had been given Xanax and Zoloft, but that she had not seen a mental health professional.[9]

On June 4, 2008, Snow was examined by Sonia Holmes, MD, as a consultative examination for purposes of disability determination.[10] Dr. Holmes reported that Snow had been diagnosed with COPD and emphysema, and that she had been prescribed medications but currently was taking none. Snow told Dr. Holmes that she had smoked three packs of cigarettes per day for 30 years, but had recently decreased to a half pack per day. Snow also reported "occasional" anxiety attacks and depressed mood, but that she was not currently taking Xanax or Zoloft. Dr. Holmes' records from her examination of Snow's chest reported "[m]ild rhonchi bilalterally," no wheezing or crackles, and good air movement. Her psychiatric exam results state,

---

[9]   R. 119-122, 124.

[10]  R. 214-217.

"[T]hought processes intact, memory and judgment are good, able to participate in normal conversation, speech is normal, affect is normal."[11]

On July 28, 2008, Mark Lehman, Ph.D., conducted a psychological examination of Snow.[12] He specified that Snow was the sole informant for his assessment and that no supporting documentation was available. Dr. Lehman's report indicates that Snow had a positive response to Zoloft and Xanax but had run out of the medications and could not afford refills. He reported that Snow was independent in hygiene and grooming, able to perform all routine cleaning (including mopping, vacuuming, dusting, and sweeping), did routine cooking and laundry, did some yard work, and that she reported no limitations in shopping or managing her financial affairs. Dr. Lehman stated that "Ms. Snow's ability to complete routine tasks is only slightly compromised by her emotional concerns. Her primary limitations seem to be medical ones."[13] He further noted no problems with fine motor control; speech "of an appropriate volume, logical, goal directed and clearly articulated"; thought processes that were "essentially normal" with "no evidence of loose associations, tangential thinking or circumstantiality"; flat affect, depressed mood, and open crying during the

---

[11]   R. 216.

[12]   R. 221-225.

[13]   R. 223.

interview; absence of confusion; low average or borderline intelligence; and unimpaired judgment and insight.[14] He assigned her a Global Assessment of Functioning ("GAF") score of 45,[15] and concluded, "Ms. Snow's symptoms would likely improve with treatment or a resolution of her medical problems."[16]

On August 21, 2008, a Psychiatric Review Technique form was completed by Caren Phelan, Ph.D.[17] On a checklist for functional limitations, Dr. Phelan assessed Snow as moderately limited for activities of daily living, mildly limited in maintaining social functioning, and without limitation in maintaining concentration, persistence and pace.[18] She concluded that the allegations were not wholly supported by the medical evidence, and stated that Snow "may be [somewhat] limited [in] sustaining a normal work week due to her [anxiety symptoms] but not wholly compromised."[19] On a second form entitled Mental Residual Functional Capacity Assessment, Dr. Phelan completed a more detailed checklist. She assessed Snow as "not significantly

---

[14] R. 223-224.

[15] The ALJ's opinion states, without citation to the record, that on August 11, 2008, Snow was assessed with a GAF of 40.

[16] R. 225.

[17] R. 226-239.

[18] R. 236.

[19] R. 238.

limited" in multiple categories, including carrying out short and simple instructions, maintaining attention and concentration for extended periods, and working in coordination or proximity to others without being distracted by them. She assessed Snow as moderately limited in categories including carrying out detailed instructions, completing a normal workday without interruptions from psychological symptoms, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes.[20] She did not assess Snow as markedly limited in any category.

In early 2009, Snow was treated at the Lone Star Clinic for her COPD and her anxiety. In January 2009, her records state, "The onset of the anxiety disorder has been acute and has been occurring for years. The anxiety disorder is described as moderate." She was prescribed Zoloft and Ativan for anxiety. After two months of treatment, she reported that her COPD and breathing had dramatically improved.[21]

At her hearing on April 22, 2009, Snow testified that she was taking Ativan and Zoloft.[22] She testified that she did not go to the grocery store by herself because she was "paranoid" and "scared of crowds."[23] She testified that she did not clean the

---

[20] R. 240-242.

[21] R. 331-343.

[22] R. 30.

[23] R. 31.

house often because her husband did it for her, that her husband cooked her meals. However, she also testified that her husband was receiving disability benefits because he "fell off a roof and broke his back and he has deterioration of the spine."[24] She stated that she felt safe in her house, and sometimes had anxiety attacks and took Ativan to "take[] the edge off it."[25] She stated that she stayed in her bedroom three or four days per week , and had to push herself to bathe and get dressed.[26]

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[27] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] "An

---

[24]   R. 36.

[25]   R. 32.

[26]   R. 33.

[27]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[28]   FED. R. CIV. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*,
(continued...)

issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[29]

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole, and second, whether the Commissioner applied the proper legal standards to evaluate the evidence.[30] "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[31] It is more than a mere scintilla and less than a preponderance.[32]

When applying the substantial evidence standard on review, the court scrutinizes the record to determine whether such evidence is present.[33] In determining

---

[28] (...continued)
529 F.3d 335, 339 (5th Cir. 2008).

[29] *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

[30] *See Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

[31] *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[32] *Id.*; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[33] *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan*
(continued...)

whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[34] If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[35] Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices or medical findings support the decision.[36] The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.[37] In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve.[38]

## IV. ANALYSIS

### A. Statutory Basis for Benefits

Snow applied for both Social Security disability insurance and Supplemental

---

[33] (...continued)
*v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[34] *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).

[35] *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

[36] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[37] *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272.

[38] *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

Security Income (SSI) benefits. Social Security disability insurance benefits are authorized by Title II of the Social Security Act. The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured[39] *and* disabled,[40] regardless of indigence.

SSI benefits are authorized by Title XVI of the Social Security Act, and provides an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line.[41] Eligibility for SSI is based on proof of disability[42] and indigence.[43] A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which he applies for benefits, no matter how long he has actually been disabled.[44] Thus, the month following an application fixes the earliest date from which SSI benefits can be paid. Eligibility for SSI, however, is not dependent on insured status.

Although these are separate and distinct programs, applicants to both programs

---

[39]  42 U.S.C. § 423(c) (definition of insured status).

[40]  42 U.S.C. § 423(d) (definition of disability).

[41]  20 C.F.R. § 416.110.

[42]  42 U.S.C. § 1382c(a)(3) (definition of disability).

[43]  42 U.S.C. §§ 1382(a) (financial requirements).

[44]  *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); 20 C.F.R. § 416.335.

must prove "disability" under the Act, which defines disability in virtually identical language. Under both provisions, "disability" is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[45] The law and regulations governing the determination of disability are the same for both programs.[46]

### B. Determination of Disability

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant work; and (5) whether the claimant is capable of performing any other work.[47] The

---

[45] 42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382c(3)(A) (SSI).

[46] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[47] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453. The Commissioner's analysis at steps four and five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations. *Perez*, 415 F.3d at 461-62. The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

claimant has the burden to prove disability under the first four steps.[48] If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant is capable of performing other substantial gainful employment that is available in the national economy.[49] Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut the finding.[50] A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.[51]

In this case, at step one, the ALJ determined that Snow had not engaged in substantial gainful activity since her alleged onset date of March 9, 2008.[52] The ALJ found at step two that Snow had four severe impairments: chronic obstructive pulmonary disease ("COPD"), hypertension, obesity, and anxiety disorder. At step three, the ALJ concluded that Snow's impairments, considered singly or in combination, did not meet or medically equal a listed impairment in the relevant federal regulations.

---

[48] *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619.

[49] *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.

[50] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[51] *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

[52] Snow meets the insured status requirements of the Social Security Act through December 31, 2012.

Before proceeding to step four, the ALJ assessed Snow's residual functional capacity ("RFC") as follows:

> [T]he claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can lift or carry 10 pounds occasionally but not frequently; she can stand or walk for 2 hours in an 8 hour day; she can sit for 6 hours in an 8 hour day; she can never climb ropes, ladders, or scaffolds; she should never be exposed to extreme heat, extreme cold, fumes, noxious odors, gases, chemicals, or poor ventilation; she may not work at unprotected heights or around dangerous moving machinery; she can do only simple, 1 to 3 step tasks in a routine work environment; and she should have little or no contact with the general public.[53]

At step four, the ALJ determined that Snow was not capable of performing her past relevant work as a certified nurse's aide. At step five, he determined that jobs existed in the national and regional economy that Snow could perform, taking into account her RFC, age, education, and work experience. Therefore, the ALJ concluded that Snow was not disabled from March 9, 2008, through June 17, 2009, the date of decision.

### C. **Plaintiff's Argument for Reversal**

Snow argues that the Commissioner's denial of benefits should be reversed because the ALJ's finding regarding Snow's mental RFC is not supported by substantial evidence. In particular, Plaintiff argues that her limitations in her abilities to be around others were not properly considered because, when the vocational expert

---

[53]   R. 14.

("VE") testified regarding jobs that Snow had the RFC to perform, she identified jobs that required close proximity to workers.[54]

Plaintiff's citations to the record are weak support for her argument. First, Plaintiff cites to the Mental RFC checklist completed by Dr. Phelan, in which Dr. Phelan checked "moderately limited" regarding Snow's ability to ask simple questions or request assistance, and regarding her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.[55] However, Dr. Phelan also assessed Snow as having *no* significant limitations in her ability to work in coordination or proximity to others without being distracted by them.[56] In other words, Dr. Phelan's assessment indicated that Snow could be distracting to others, but no significant issues with Snow becoming distracted by her peers.

Moreover, the hearing transcript does not support Snow's characterization of the VE's testimony regarding the relevant job requirements. When asked to assume

---

[54] Plaintiff's Motion, at 4. Plaintiff argues that "had Plaintiff's moderate limitation in her ability to work around co-workers been properly considered by the ALJ, the ALJ would have found Plaintiff could not perform her past relevant work" and therefore that Plaintiff was prejudiced. *Id*. However, as stated above, the ALJ found at Step Four that Snow could *not* perform her past relevant work. The Court will construe Plaintiff's argument to be a challenge to the ALJ's Step Five finding, which was that Plaintiff's RFC permitted her to perform the duties of other jobs in the economy.

[55] R. 241.

[56] R. 240.

certain restrictions similar to Snow's, the VE testified that a hypothetical person with those restrictions could not perform Snow's past relevant work as a certified nurse's assistant.[57] When the ALJ asked about other jobs in the regional or national economy, the VE testified that a person with the specified restrictions would be able to perform the job duties of an optical goods worker, a final assembler, or a sorter.[58] Plaintiff's counsel then questioned the VE regarding the amount of "work space" that would be typical for a person working as an optical goods worker, final assembler, or sorter. The VE replied that it would "depend on the each employer."[59] Counsel then questioned her as follows:

> [ATTY:]  I mean I guess my question is are we talking about nine square feet, twelve square feet . . . where they're doing the majority of their work?
>
> [VE:]  Well, it's going to depend on the employer . . . It depends on the work environment but I would say it's—that the personal space of working would be small, the size of a desk, if not smaller.
>
> [ATTY:]  And why would it be that small . . . because of the next person

---

[57] R. 38. *See* R. 37-38 ("[W]ould you assume for me a person who could stand or walk about two hours in an eight hour day with normal breaks or sit for six. Lifting or carrying ten pounds occasionally. Never climbing ropes, ladders, or scaffolding. All these are never[:] exposure to extreme heat, exposure to extreme cold, exposure to dust, mixed gasses, et cetera. Exposure to unprotected heights or dangerous machinery. Mentally limited to a simple routine work environment having little or no contact with the public.").

[58] R. 38.

[59] R. 39.

> over?
>
> [VE:]    Usually there would be more people doing the work. But, again, it depends on the employer.[60]

In other words, although the VE offered some speculation as to the available work space, she repeatedly stated that it would depend on the particular employer. Moreover, she gave no testimony regarding required proximity to coworkers. The VE's testimony therefore does not support Plaintiff's argument that close proximity to co-workers would be required when performing the jobs relied upon by the ALJ at Step Five. Plaintiff has cited to no other evidence supporting her assertion that close proximity to coworkers would be required.

Plaintiff's arguments are inadequately supported by summary judgment evidence. The Commissioner met his Step Five burden to show that Plaintiff could perform the jobs identified by the ALJ, and Plaintiff did not meet her burden to prove that she could not perform those jobs.[61] Because the ALJ's decision in Snow's case

---

[60]   R. 39.

[61]   *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) ("'[A]t step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.'") (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999).

is supported by substantial evidence,[62] it must be affirmed.[63]

## V. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 24] is **DENIED**. It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 22] is **GRANTED**.

A separate final judgment will issue.

SIGNED at Houston, Texas, this **14th** day of **July, 2011**.

_____
Nancy F. Atlas
United States District Judge

---

[62] *Audler*, 501 F.3d at 447 ("substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion).

[63] *Perez*, 415 F.3d at 461.